103 So.2d 829

Tommy J. **ROLEY**

v.

**STATE.**

**2 Div. 961.**

Court of Appeals of Alabama.

March 4, 1958.

Rehearing Denied March 25, 1958.

J. R. Tucker, Atmore, for appellant.

John Patterson, Atty. Gen., and Robt. G. Kilgore, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

On March 18, 1957, Roley was indicted for the larceny of a dog, the property of Henry F. Harris. This offense is made petty larceny and is punishable under Code 1940, T. 14, § 334. He appealed from the judgment of guilt passed on him by the Wilcox Circuit Court on April 16, 1957, conformably to a jury verdict which carried a fine of $100 to which the judge added twelve months' hard labor.

The State produced testimony to show that: On December 15, 1956, Mrs. J. A. Cook, the mother of the dog's owner, had gone across the road from her house, had opened up a store for some neighborhood customers when some strangers drove up. A young boy came in and asked for Vienna sausage; and, while he was peering at various other wares on the shelves, a heavy-set red faced man came in. A man she identified as the defendant stood outside and hollered, "Come on, Bub, let's go."

Mrs. Cook watched the trio drive off and wrote down the tag number of the car. She later turned this information over to the sheriff who had the car traced to Roley who was living in Florida near Atmore, Alabama.

Mrs. Cook had been keeping her son's two bird dogs: she had just given them both breakfast just before she went to the store. One of the dogs (Chief, a setter) she never saw again; Hugo, the pointer, was brought back sometime presumably after the end of the hunting season.

Betty Lee, who cooked for Mrs. Cook and who testified she knew both dogs well, related that on that same morning she saw a car come down toward her house from Mrs. Cook's. It pulled up at a gate and apparently turned around and went back to the store. Later on Betty saw the defendant and another man with Hugo crossing a field in a creek bottom toward some woods. Both Mrs. Cook and Betty heard sounds of a shotgun.

Mr. Fleet Hollinger, who lived west of Camden (as did Mrs. Cook), testified that he saw the defendant on the same morning and that Roley was asking about who had good bird dogs, since he wanted to breed a dog.

Mr. Harris took the stand and related how, after tracking down Roley's address through the car tag, he had, on February 19, 1957, gone to Roley's house in Bratt, Florida, and there saw Chief in the yard. He went off to fetch a constable and on his return Chief was gone—this time for good. Two days later, Hugo was found in Bratt at the constable's house.

Roley, who conducted his own defense—save that the trial judge appointed local counsel to help him pick a jury—put a fellow hunter on the stand who testified he owned two dogs which he and Roley had hunted: the jury apparently was to infer that one of these dogs could have been seen by Harris at the defendant's home in February. His other two witnesses were only as to his general good reputation.

■■ The possession of recently stolen personalty raises an inference from which the jury may convict, and the person in possession owes an explanation as to how he came by the property. And the jury is the judge of whether or not the property was stolen "recently."

**410**

Here, while Roley is protected by the presumption of innocence, this presumption is rebuttable by lawful evidence if it convinces the jury of guilt beyond a reasonable doubt. The conflicting tendencies of the evidence or the lack of it were for the jury to weigh. The only question on appeal is whether there was any probably substantial error injurious to the defendant.

On appeal Roley's counsel contends the State failed to connect the accused with the taking: that the evidence being largely circumstantial does not exclude hypothesis which points to his innocence as much as to his guilt. It is claimed that the jury stretched credulity to the breaking point in accepting Harris's statement that he saw his dog in Roley's yard. Nevertheless, Harris made the statement; Roley cross-examined Harris on that point quite intelligently and pertinently. The jury were the ones to consider whether or not to believe the statement.

In Lawson v. State, 38 Ala.App. 322, 82 So.2d 812, 813, we find:

"Possession is not limited to actual manual control upon or about the person. If under one's power and dominion the thing is possessed. That the appellant had knowledge of the presence of the stolen groceries can reasonably be inferred from his possession and control of the truck. Certainly, it was for the jury to so determine in the absence of any evidence by the appellant tending to justify his technical possession of the groceries.

"The appellant having been found in possession of recently stolen goods, and no evidence having been submitted in his behalf directed toward justifying or explaining such possession, the verdict and judgment are amply supported under the principles of law applicable."

The record presents only the one question; and concluding that the State made out a prima facie case, we affirm the judgment below.

Affirmed.